# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MY SWEET PETUNIA, INC., ) <br> ) <br> *Plaintiff*, ) <br> ) <br> ) <br> v. ) <br> ) <br> TONIC STUDIOS USA INC., ) <br> ) <br> *Defendant*. ) | C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff My Sweet Petunia, Inc., by its attorneys, brings this Complaint against Defendant Tonic Studios USA Inc. and hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., specifically including 35 U.S.C. § 271.

## THE PARTIES

2. My Sweet Petunia, Inc. ("Plaintiff" or "Petunia") is a corporation organized and existing under the laws of the State of Illinois, having its principal place of business at 310 Ridgeview Drive, Sherrard, Illinois 61281.

3. On information and belief, Tonic Studios USA Inc. ("Defendant" or "Tonic") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 800 Stockton Avenue, Ripon, California 95366.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.  This Court has personal jurisdiction over Tonic because Tonic is deemed to reside in this judicial district by virtue of being incorporated in the State of Delaware. In addition, on information and belief, Tonic regularly and purposefully conducts business in Delaware, including but not limited to availing itself of the rights, protections, and benefits of Delaware law, and offering to sell and/or selling products to customers located in Delaware and/or for use in Delaware.

6.  Venue is proper in this Court under 28 U.S.C. §§ 1391(c) and 1400(b).

## FACTUAL BACKGROUND

7.  U.S. Patent No. 9,597,909 ("the '909 Patent"), titled "Craftwork Tools and Kits," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on March 21, 2017. The '909 Patent is and remains valid and enforceable. Petunia is the owner by assignment of the entire right, title, and interest in and to the '909 Patent, including the sole and undivided right to sue for infringement. A true and correct copy of the '909 Patent is attached hereto as Exhibit 1.

8.  The '909 Patent is generally directed to a novel stamping tool for craftwork that includes a substantially rectangular base, a workspace, a widthwise raised side portion, a lengthwise raised side portion, and a substantially rectangular cover portion attached to the base by at least one hinge.

9.  The invention to which the '909 Patent is directed enables a user to accurately apply an ink stamp to a desired portion of a stampable substrate by placing the substrate on the workspace, placing the ink stamp on a face of the cover opposite the workspace, and moving the cover toward the workspace as one would turn a page of a book.

10. The simplicity and precision of the patented invention has catapulted Petunia's commercial embodiment of the invention recited in at least Claim 1 of the '909 Patent, marketed by Petunia under the name "MOST INCREDIBLE STAMP TOOL INVENTED" or "MISTI" for short, to overwhelming success and has generated millions of dollars in sales for Petunia in the three short years since the product was invented.

11. Petunia's MISTI stamping tool is currently sold around the world by over 330 retailers in the United States and over 240 retailers abroad.

12. The MISTI stamping tool was even hailed as the "Best Hot Product" at the 2016 Craft and Hobby Association's MEGA Conference & Trade Show, the largest arts and crafts trade show in the world.

13. Petunia consistently marked its MISTI stamping tool as "Patent Pending" on both the product packaging and product itself from about January 22, 2015, to March 20, 2017, the day before the '909 Patent issued.

14. Since the issuance of the '909 Patent on March 21, 2017, Petunia has marked its MISTI stamping tool with the '909 Patent serial number in compliance with 35 U.S.C. § 287.

15. On information and belief, just prior to the 2017 MEGA Conference & Trade Show in January 2017, Tonic announced launch and presale of the "Tim Holtz Stamp Platform" Model 1708E stamping tool shown in Exhibit 2 (the "Tonic Product").

16. The Tonic Product is named after Mr. Tim Holtz.

17. On information and belief, Mr. Tim Holtz is an individual residing in Arizona who is well known in the crafting industry.

18. On information and belief, Mr. Holtz was aware of the MISTI stamping tool no later than November 2016 when he received a custom MISTI stamping tool manufactured specifically for him in the color brown by Petunia at the request of a third party.

19. Mr. Holtz subsequently proclaimed his love of Petunia's MISTI stamping tool in a post on his personal blog,[1] a screen print of which is attached hereto as Exhibit 3 (the "Blog Post"), stating "truth be told i never bought a misti simply because i wasn't a fan of the hot pink measuring guides. so a huge thank you to my friend jennifer mcguire and iliana myska (the inventor of the misti) for creating a custom 'brown' misti set just for me – i love them!"

20. Mr. Holtz also exuded the virtues of the MISTI stamping tool in the Blog Post, exclaiming that "the misti is the very best tool to be able to stamp multiple times to get a crisp image – a serious must have!"

21. A true and correct copy of a photograph from the Blog Post showing the custom brown MISTI stamping tool made by Petunia for Mr. Holtz is shown below. The words "U.S. Patent Pending" appear on the hinge of the product where indicated by the arrow below.



---

[1] Available at: http://timholtz.com/12-tags-of-2016-november/.

22.     On information and belief, Mr. Holtz assisted Tonic with the design of the Tonic Product.

23.     Approximately two months after publishing the Blog Post, Mr. Holtz assisted Tonic with launching the Tonic Product by posting at least two videos to YouTube, including one dated January 17, 2017 and titled "2017 Sneak Peek - Tonic Studios,"[2] and another dated January 21, 2017 and titled "Tim Holtz Stamping Platform - Creativation - CHA 2017."[3]

24.     In a January 17, 2017 video where Tim Holtz introduced the Tonic Product, starting at about the 3 min. 25 sec. mark, Tim Holtz stated: "I wanted to design one because there are certain needs and specifications that I wanted and that's what it's all about, so here we go."[4]

25.     On information and belief, Mr. Holtz licenses his name to Tonic for use in connection with the Tonic Product.

26.     On information and belief, Tonic developed and released the Tonic Product to directly compete with Petunia's patented MISTI stamping tool.

27.     On information and belief, Tonic was aware of the existence of the MISTI stamping tool and the fact that the MISTI stamping tool was the subject of a pending U.S. patent application prior to January 2017 at least by virtue of Mr. Tim Holtz's involvement in the development of the Tonic Product.

28.     On March 13, 2017, prior to issuance of the '909 Patent, Petunia put Tonic on notice of the imminent issuance of the '909 Patent and informed Tonic that Petunia believed the Tonic Product fell within the scope of the allowed claims of the '909 Patent.

29.     Notwithstanding Tonic's actual and constructive knowledge of the '909 Patent, upon information and belief, Tonic continues to make, have made, use, sell and/or offer to sell

---

[2]     Available at: https://www.youtube.com/watch?v=bdM_JiV6NF4.
[3]     Available at: https://www.youtube.com/watch?v=WykeFdGl4W0&t=310s.
[4]     Available at: https://www.facebook.com/pg/timholtzdesigns/videos/.

within the United States, and/or import into the United States without authority the Tonic Product.

30. On information and belief, the Tonic Product satisfies each and every limitation of at least Claim 1-3 and 5-8 of the '909 Patent, either literally or under the doctrine of equivalents.

### COUNT I: DIRECT INFRINGEMENT OF THE '909 PATENT

31. Petunia realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

32. On information and belief, Defendant has directly infringed and/or is currently directly infringing at least Claims 1-3 and 5 of the '909 Patent in violation of 35 U.S.C. § 271(a) by making, having made, using, offering for sale, selling in the United States, and/or importing into the United States without authority, the Tonic Product.

33. The Tonic Product, including the specific features shown in Exhibit 2 to this Complaint, includes all the features of Claim 1 of the '909 Patent, including:

a substantially rectangular base comprising a base width, a base length and a base periphery defining a perimeter of the base;

a workspace configured to support a stampable substrate having a widthwise edge and a lengthwise edge;

a widthwise rigid raised side portion attached to the base and extending generally parallel to the base width, the widthwise rigid raised side portion being raised relative to an upper surface of the workspace, adjacent to the periphery of the base, and including indicia spaced at regular intervals in the form of a rectangular ruler, the widthwise rigid raised side portion bordering the workspace

and providing a structure against which the widthwise edge of the stampable substrate may be positioned;

a lengthwise rigid raised side portion attached to the base and extending generally parallel to the base length, the lengthwise rigid raised side portion being raised relative to the upper surface of the workspace, adjacent to the periphery of the base, and including indicia spaced at regular intervals in the form of a rectangular ruler, the lengthwise rigid raised side portion bordering the workspace and providing a structure against which the lengthwise edge of the stampable substrate may be positioned, the lengthwise rigid raised side portion and the widthwise rigid raised side portion meeting at a corner having an angle of approximately ninety degrees;

a substantially rectangular cover portion comprising gridlines and connected to the base by at least one hinge, the substantially rectangular cover portion configured to pivot from an open position in which the substantially rectangular cover portion does not contact the widthwise and lengthwise rigid raised side portions to a closed position in which the substantially rectangular cover portion rests on the widthwise and lengthwise rigid raised side portions, the substantially rectangular cover portion comprising an interior surface facing the base when the substantially rectangular cover portion is in the closed position, the interior surface configured to accept an ink stamp, the substantially rectangular cover portion substantially covering the base when the substantially rectangular cover portion is in the closed position;

>wherein the substantially rectangular cover portion is translucent or clear and is configured to allow a user to see a stampable substrate on the workspace when the substantially rectangular cover portion is in the closed position.

34. The Tonic Product, including the specific features shown in Exhibit 2 to this Complaint, includes all the features of at least Claim 2 of the '909 Patent, including:

>the apparatus of Claim 1 wherein the hinge spaces the substantially rectangular cover portion above the base, when the substantially rectangular cover portion is in a closed position, by a distance substantially equal to a thickness of the lengthwise and the widthwise rigid raised side portions; and further wherein the substantially rectangular cover portion is configured to pivot at least 180 degrees from the closed position to the open position.

35. The Tonic Product, including the specific features shown in Exhibit 2 to this Complaint, includes all the features of at least Claim 3 of the '909 Patent, including the apparatus of Claim 1 wherein the workspace is non-abrasive.

36. The Tonic Product, including the specific features shown in Exhibit 2 to this Complaint, includes all the features of at least Claim 5 of the '909 Patent, including the apparatus of Claim 1 further comprising a ferromagnetic material disposed below the workspace and at least one magnet configured to secure a stampable substrate located on the workspace to the ferromagnetic material.

37. On information and belief, since at least March 13, 2017, Defendant has had actual knowledge of the '909 Patent and knowledge that the Tonic Product, and use thereof in accordance with Defendant's instructions, infringes one or more claims of the '909 Patent, including Claim 1-3 and 5-8.

## COUNT II: INDUCED INFRINGEMENT OF THE '909 PATENT

38. Plaintiff realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein.

39. On information and belief, and based on the foregoing, Defendant has and/or continues to actively induce infringement of the '909 Patent by at least encouraging and instructing customers and potential customers to use the Tonic Product in a manner that infringes at least Claims 6-8 of the '909 Patent under 35 U.S.C. § 271(b).

40. For example, Tonic provides on its website for the Tonic Product a video[5] instructing customers to use the Tonic Product in a manner that directly infringes at least Claims 6-8 of the '909 Patent.

41. Upon information and belief, Defendant has and/or continues to engage in these activities with the specific intent to cause acts which it knows or should know would constitute direct infringement of at least Claims 6-8 of the '909 Patent by such third parties, including users of the Tonic Product.

42. Defendant also engages in these inducing activities with the specific intent to induce customers and other users to directly infringe at least Claims 6-8 of the '909 Patent.

43. The Tonic Product when used as instructed by Tonic, including the specific features shown in Exhibit 2 to this Complaint, includes all the features of at least Claim 6 of the '909 Patent, including the apparatus of Claim 1 further comprising an ink-stamp attached to the interior surface.

44. Use of the Tonic Product as instructed by Tonic, including the specific features shown in Exhibit 2 to this Complaint, includes all the features of Claim 7 of the '909 Patent,

---

[5] Available at: http://tonic-studios.com/product/tim-holtz-stamp-platform-1708e/.

including a method of stamping a substrate comprising: a) providing the apparatus of Claim 1; b) providing a stampable substrate comprising a widthwise edge and a lengthwise edge; c) placing the stampable substrate on the workspace against the corner; d) placing an ink stamp on the interior surface; and e) moving the substantially rectangular cover portion from the open position to the closed position to mark the stampable substrate with the ink stamp.

45. Use of the Tonic Product as instructed by Tonic, including the specific features shown in Exhibit 2 to this Complaint, includes all the features of at least Claim 8 of the '909 Patent, including the method of Claim 7 wherein the method further comprises placing a magnet on top of the stampable substrate between step b) and step e).

46. Defendant's past and/or ongoing inducement with knowledge that infringement of Claims 6-8 the '909 Patent will take place and intent that infringement take place subjects Tonic to liability as an indirect infringer for induced infringement.

## COUNT III:  CONTRIBUTORY INFRINGEMENT OF THE '909 PATENT

47. Plaintiff realleges and incorporates by reference each of the preceding numbered paragraphs as if fully set forth herein

48. On information and belief, and based on the foregoing, Defendant has and/or continues to actively contribute to infringement of the '909 Patent by others in a manner that infringes at least Claims 6-8 of the '909 Patent under 35 U.S.C. § 271(c).

49. On information and belief, the Tonic Product offered for sale and sold by Defendant constitutes a material part of the invention claimed in at least Claims 6-8 of the '909 Patent.

50. The Tonic Product offered for sale and sold by Defendant is also a material apparatus for use in practicing the patented apparatus of Claim 6 and for practicing the patented processes of Claim 6-8 of the '909 Patent.

51. At least as a result of having been placed on notice of the '909 Patent by Petunia, Defendant knowingly offered to sell and sold the Tonic Product knowing the same to be especially made and especially adapted for use in an infringement of the '909 Patent.

52. The Tonic Product sold by Defendant is not a staple article or commodity of commerce suitable for substantial noninfringing use.

53. Defendant's offers to sell and sale of the Tonic Product contribute to infringement of at least Claims 6-8 of the '909 Patent by Defendant's customers and other users of the Tonic Product in violation of 35 U.S.C. § 271(c).

54. Defendant's infringement of the '909 Patent as set forth in Counts I - III has directly caused substantial monetary harm to Petunia in an amount to be proven at trial, including lost profits.

55. Defendant's infringement of the '909 Patent as set forth in Counts I - III has caused Petunia damages for which Petunia has no adequate remedy at law, including price erosion relating to Petunia's sale of its MISTI stamping tool product, and will continue to damage Petunia unless enjoined by this Court.

56. On information and belief, Defendant's infringement of the '909 Patent has been willful, deliberate, and with full knowledge that the manufacture, sale, offer for sale, use and importation into the United States of the Tonic Product infringes Claims 1-3 and 5-8 of the '909 Patent, justifying the award to Petunia of damages three times the amount found or assessed, in accordance with 35 U.S.C. § 284.

57. Defendant's willful infringement of the '909 Patent renders this an exceptional case, justifying an award to Petunia of its reasonable attorney fees in accordance with 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Petunia respectfully prays for judgment in its favor granting the following relief:

(a) A finding that Defendant has directly infringed, induced others to infringe, and/or contributorily infringed one or more claims of the '909 Patent;

(b) An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Petunia for Defendant's infringement of one or more claims of the '909 Patent, including both pre-judgment and post-judgment interest and costs as fixed by the Court;

(c) A finding that Defendant's infringement of one or more claims of the '909 Patent has been willful;

(d) An increase in the damages to be awarded to Petunia of three times the amount found by the jury or assessed by the Court;

(e) A declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, and a corresponding award of Petunia's reasonable attorney fees incurred in connection with the litigation;

(f) An order permanently enjoining Defendant and its respective officers, agents, servants, employees, and attorneys, and those persons acting in privity or concert with them, from committing further acts of infringement of the '909 Patent, including making, using, offering to sell, or selling in the United States, or importing into the United States Defendant's Tonic Product; and

(g)     Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and District of Delaware Local Rule 38.1, Petunia hereby demands a trial by jury on all issues so triable.

Dated: April 3, 2017             WALLER LANSDEN DORTCH & DAVIS, LLP

/s/ Eric B. Fugett
Eric B. Fugett (#5609)
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Tel: (615) 244-6380
eric.fugett@wallerlaw.com

OF COUNSEL:

Shane V. Cortesi
The Law Office of Shane V. Cortesi
3200 West End Avenue, Suite 3200
Nashville TN 37203
615-522-5318

***Attorneys for Plaintiff My Sweet Petunia, Inc.***